This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                                     **No. 32,361**

**ARTHUR J. LOVATO,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Albert J. Mitchell, Jr., District Judge (by designation)**

Gary K. King, Attorney General
Corinna Laszlo-Henry, Assistant Attorney General
Santa Fe, NM

for Appellee

Attorney and Counselor at Law, P.A.
Eric D. Dixon
Portales, NM

for Appellant

## MEMORANDUM OPINION

**SUTIN, Judge.**

{1}     A jury found Defendant Arthur Lovato guilty of driving with a breath alcohol concentration of .08 or more, driving while his license was suspended or revoked, and improperly turning at an intersection. *See* NMSA 1978, § 66-8-102(C)(1) (2008, amended 2010) (stating that it is unlawful for a person to drive in New Mexico with a breath or blood alcohol concentration of eight one hundredths or more); NMSA 1978, § 66-5-39(A) (1993, amended 2013) (prohibiting driving with a suspended or revoked license); NMSA 1978, § 66-7-322 (1978) (stating the required position and method of turning at intersections). The district court entered a judgment reflecting that Defendant had four prior convictions for driving while intoxicated (DWI) and was, therefore, a habitual DWI offender. In addition to ordering him to pay a fine, the court sentenced Defendant to a term of two and one-half years of incarceration followed by six months of supervised probation, and permanently revoked Defendant's driver's license. Defendant appeals from the court's judgment.

{2}     Defendant raises six issues on appeal, including a claimed violation of his constitutional right to a speedy trial, sufficiency of the evidence, evidentiary and constitutional confrontation challenges, and issues in regard to his sentencing. We conclude that Defendant has not demonstrated reversible error. We affirm.

**BACKGROUND**

**{3}** Because this is a memorandum opinion, and the parties are familiar with the factual and procedural background, we do not provide that information in a separate section. Relevant facts are presented, as needed, accompanying our analysis of Defendant's appellate issues.

**I. SPEEDY TRIAL**

**{4}** Defendant was arrested and charged in this case on February 26, 2010. Defendant's case was tried before a jury on March 30, 2012. From the date that Defendant was arrested to the date that he was tried spanned approximately twenty-five months.

**{5}** Defendant filed two motions to dismiss on speedy trial grounds, the first on May 26, 2011, and the second on January 4, 2012; both were denied. Defendant argues that the district court erred in failing to dismiss the charges against him on speedy trial grounds. In reviewing the district court's ruling on a speedy trial motion, the appellate courts "give deference to the district court's factual findings," but we review the speedy trial factors de novo. *State v. Spearman*, 2012-NMSC-023, ¶ 19, 283 P.3d 272 (alteration, internal quotation marks, and citation omitted).

**{6}** Defendant and the State agree that this was a simple case and that the twenty-five-month delay in bringing Defendant to trial therefore required consideration of the four speedy trial factors. *See State v. Garza*, 2009-NMSC-038, ¶ 48, 146 N.M. 499,

212 P.3d 387 (holding that delay in excess of one year in a simple case requires evaluation of the speedy trial factors). Thus, we consider "(1) the length of delay[;] (2) the reasons for the delay[;] (3) the defendant's assertion of his right [to a speedy trial;] and (4) the actual prejudice to the defendant[.]" *Id.* ¶¶ 13-14. The district court did not weigh any one factor heavily in Defendant's favor.

**A.      Length of Delay**

{7}      While the length of delay plays a role in the threshold determination of presumptive prejudice, it is also weighed in the balance at the second stage of the analysis. *Id.* ¶ 23. "Considering the length of delay as one of the . . . factors, the greater the delay the more heavily it will potentially weigh against the [prosecution]." *Id.* ¶ 24. In evaluating the length of delay factor, we examine "the extent to which the delay stretches beyond the bare minimum needed to trigger judicial examination of the claim." *State v. Coffin*, 1999-NMSC-038, ¶ 59, 128 N.M. 192, 991 P.2d 477 (internal quotation marks and citation omitted). On appeal, Defendant does not take a position regarding the weight that should be assigned to the delay of approximately thirteen months beyond the twelve-month threshold for simple cases. We have held that a delay of six months beyond the triggering date in an intermediate case weighed only slightly against the prosecution. *See State v. Montoya*, 2011-NMCA-074, ¶ 17, 150 N.M. 415, 259 P.3d 820. In contrast, in *Garza*, our Supreme Court recognized

4

that a delay of five or more years weighed heavily in the defendant's favor. 2009-NMSC-038, ¶ 24. Here, the delay of thirteen months beyond the triggering date, being longer than the six-month delay in *Montoya*, but significantly shorter than the five to six years discussed in *Garza*, weighs moderately against the State and in Defendant's favor. *See* 2009-NMSC-038, ¶ 24 (recognizing that a delay of three years and nine months "was too short to weigh heavily" in the defendant's favor).

**B.      Reasons for the Delay**

{8}      Defendant argues that the State delayed the trial in this matter in four ways:  (1) by excusing Judge Orlik; (2) by failing to offer to stipulate to a judge, thereby "allow[ing] the matter to proceed through the bureaucracy of multiple [j]udge reassignments until finally the Supreme Court stepped in and appointed Judge Mitchell"; (3) failing to seek a trial date from Judge Mitchell as a first priority and choosing instead as a "first thing" to move to revoke Defendant's bond; and (4) vacating the July 28, 2011, trial setting so that the prosecutor could attend a nominating committee hearing.

{9}      The record reflects that the State filed a notice of excusal as to Judge Orlik on November 16, 2010. Between November 16 and December 14, 2010, two judges were assigned to and recused from the case. On December 14, 2010, our Supreme Court designated Judge Mitchell to preside over the case. On December 14, 2010, the

5

State filed a motion to set aside Defendant's bond and to modify the conditions of his release on the ground that Defendant had been arrested on December 14, 2010, for another DWI offense. On July 28, 2011, the court granted a stipulated joint order for continuance on the basis that the prosecutor would not be available for the August 2, 2011, trial. In the stipulated order, the State and Defendant agreed to vacate the August 2, 2011, trial date and that any resultant delay would weigh against the State in a speedy trial analysis. Trial was re-set to commence on September 28, 2011.

{10} In light of the foregoing, approximately one month of delay can reasonably be viewed as having resulted from the State's excusal of Judge Orlik; and pursuant to the parties' stipulation, the approximate two-month delay from the vacated trial date of August 2, 2011, to the re-set trial date of September 28, 2011, weighs against the State. Defendant does not demonstrate by evidence in the record or by argument in his briefs that the State's motion to revoke Defendant's bond that was filed the same day that Judge Mitchell was assigned to the case caused any delay in bringing the case to trial, and we will not assume that it did. Thus, Defendant's argument regarding the State-caused delay in this case accounts for three months of the approximate twenty-five-month delay in this case.

{11} Defendant does not demonstrate that the court erred in its weight assignment in regard to the remaining twenty-two months of delay, at least eight of which were

6

attributed by the district court to Defendant's failures to appear and requests for continuances. *See State v. Harvey*, 1973-NMCA-080, ¶ 7, 85 N.M. 214, 510 P.2d 1085 ("[D]elay occasioned by the accused will weigh heavily against him."). Beyond showing that three months of the delay was caused by the State, Defendant offers no argument or record support to show that this factor should weigh in his favor. We will not assume that the district court erred by not weighing the reasons for the delay factor in Defendant's favor, nor will we search the record on Defendant's behalf to determine whether this factor should weigh in his favor. *See State v. Dominguez*, 2014-NMCA__, ¶ 26, __ P.3d __ (2014 WL 621866) (stating that we will not search the record to find facts to support the defendant's argument).[1] Having been provided with no persuasive argument or record support to support doing so, we do not weigh the reasons for the delay factor in Defendant's favor.

**C.      Assertion of Defendant's Right**

---

[1]     The dissent appears to contend that we must review all arguments and evidence presented to the district court, even if Defendant failed to raise these arguments or discuss this evidence in his briefs on appeal. It has never been the practice of our appellate courts to raise arguments not mentioned by a party on appeal or to search for evidentiary support that a party does not tell us about in his or her briefing. Our Supreme Court has cautioned, "[c]ourts risk overlooking important facts or legal considerations when they take it upon themselves to raise, argue, and decide legal questions overlooked by the lawyers who tailored the case to fit within their legal theories." *N.M. Dep't of Human Servs. v. Tapia*, 1982-NMSC-033, ¶ 11, 97 N.M. 632, 642 P.2d 1091.

{12} The third factor in the analysis requires us to assign weight to Defendant's assertion of his right to a speedy trial. *State v. Tortolito*, 1997-NMCA-128, ¶ 15, 124 N.M. 368, 950 P.2d 811. Frequent and forceful assertions of the right to a speedy trial will weigh in a defendant's favor. *See Garza*, 2009-NMSC-038, ¶ 32. On the other hand, where a defendant waits to assert his right to a speedy trial until many months have passed from the time of the arrest or indictment, the assertion of the right factor will weigh only slightly in his favor. *See State v. Valencia*, 2010-NMCA-005, ¶ 27, 147 N.M. 432, 224 P.3d 659 (weighing the assertion of the right factor "only slightly in [the defendant's] favor" where the defendant made a pro forma assertion at the outset of the case and then waited approximately nineteen months before filing a motion to dismiss on speedy trial grounds); *see also State v. Johnson*, 1991-NMCA-134, ¶ 42, 113 N.M. 192, 824 P.2d 332 (Hartz, J., dissenting) (recognizing that "courts regularly have found that the assertion-of-the-right factor weighs against the defendant despite a motion to dismiss on speedy trial grounds, particularly when the motion was filed well after arrest or indictment").

{13} In this case, Defendant asserted his right to a speedy trial by filing two motions to dismiss for an alleged violation of that right. The first was filed on May 26, 2011, approximately fifteen months after his arrest; and the second one was filed on January 4, 2012, almost twenty-three months after his arrest. Although Defendant's assertion

8

of the right was adequate, it was neither forceful nor frequent. *See Garza*, 2009-NMSC-038, ¶ 32 (stating that we "accord weight to the 'frequency and force' of the defendant's objections to the delay"). Owing to the lateness and infrequency of Defendant's assertion of his right to a speedy trial, we weigh this factor only slightly in his favor. *See Valencia*, 2010-NMCA-005, ¶ 27.

**D.      Prejudice to Defendant**

{14}      We consider three interests relevant to the prejudice factor analysis:  (1) to prevent oppressive pretrial incarceration, (2) to minimize the accused's anxiety and concern, and (3) to limit the possibility of an impairment to the defense. *Garza*, 2009-NMSC-038, ¶ 35. It is the defendant's burden to provide proof in the district court of any alleged prejudice.     *See Spearman*, 2012-NMSC-023, ¶ 39 (requiring the defendant to offer evidence to support his claims of prejudice). Defendant argues that as a result of the delay, he "endured oppressive pretrial incarceration," "undue anxiety and concern[,]" and impairment to his defense. Notwithstanding these bare assertions of prejudice, Defendant presents an argument and citations to the record only in regard to the impairment of his defense.

{15}      Defendant argues that his "defense was terminally hobbled" by the absence of Javier Hernandez, "a key defense witness who was available for trial on October [4], 2010[,] but left the jurisdiction of the [c]ourt by the time of trial on March [30], 2012."

9

Defendant claims that Mr. Hernandez would have supported the defense's contention that it was not Defendant who was driving the truck.

{16}    Defendant testified in his own defense at trial. To paraphrase Defendant's testimony, in relevant part, he stated that on the day in question he had a couple of beers and asked his friend, Mr. Ramirez-Ramirez, to give him a ride home. According to Defendant, Mr. Ramirez took Defendant home and left. Then Defendant called a friend, Javier Hernandez, and asked Mr. Hernandez to bring him some keys. According to Defendant, Mr. Hernandez showed up fifteen or twenty minutes later, driving the pickup that was subject to the traffic stop, gave Defendant the keys to the pickup, and "took off running[.]" Defendant testified that he never drove the pickup. According to Defendant, when he saw the "cop lights," he walked from the front porch to the pickup to see what was going on. Defendant testified further that he did not know where Mr. Hernandez was on the date of the trial.

{17}    Despite the seeming importance to the defense of Mr. Hernandez's testimony, Defendant declined an offer by the district court to issue a bench warrant for Mr. Hernandez to go to court. Additionally, Defendant argues that two other witnesses, Richardo Ramirez-Ramirez and Xitalali Soto, would have testified that Defendant did not drive home, but was driven home on the night in question; but, owing to the delay, those witnesses had left the jurisdiction by the date of trial.

10

**{18}** Defendant fails, on appeal, and failed in the district court to provide any evidence to substantiate his claim that, but for the delay in this case, Mr. Hernandez, Mr. Ramirez-Ramirez, and Ms. Soto would have been available and willing to testify favorably to the defense. Defendant's counsel's assertion of the witnesses' non-availability and his further assertion that their non-availability was caused by the delay do not constitute evidence. *State v. Hall*, 2013-NMSC-001, ¶ 28, 294 P.3d 1235 ("The mere assertions and arguments of counsel are not evidence." (internal quotation marks and citation omitted)). In light of Defendant's having wholly failed to substantiate his claims that he was prejudiced by the delay in this case, we do not weigh this factor in his favor.

**{19}** The dissent concludes that Defendant suffered "conditions of incarceration" that were "oppressive" by virtue of having spent fifteen months either held in jail or under house arrest. We disagree with the dissent's view.

**{20}** The record reflects that on February 26, 2010, Defendant was arrested for the DWI fifth offense that is presently at issue and having posted a secured bond, he was released from jail on the same day. The conditions of Defendant's February 26, 2010, release were enumerated on a "release order and bond" form, including a prohibition against possession or consumption of alcohol. Notably, house arrest was not among the conditions of Defendant's February 26, 2010, release.

11

{21}     On December 14, 2010, Defendant was arrested again for DWI and charged with a sixth offense.[2]  Because Defendant's fifth offense was still pending and Defendant was bound by the February 26, 2010, conditions, including the prohibition against alcohol consumption, the State moved, on December 14, 2010, to set aside Defendant's bond for a violation of the conditions of his release.  The district court set aside Defendant's bond and issued a bench warrant, and on December 15, 2010, Defendant was taken into custody.  On December 15, 2010, the court refused to permit Defendant to post a bond, and he was held in jail.  On January 5, 2011, after a December 22, 2010, hearing to review his conditions of release, Defendant posted a secured bond and was released from jail pursuant to certain conditions, including house arrest except for work, during which time he would wear an ankle monitor.  Defendant remained under the January 5, 2011, conditions of release until March 30, 2012, when he was convicted of the fifth DWI offense that is the subject of this appeal.  Thus, Defendant was confined in jail for less than one full day related to the

_____

[2] Remarkably, Defendant's counsel represented to the district court that Defendant was not the driver involved in the sixth DWI incident; rather, according to Defendant's counsel, "Javier" was driving Defendant's vehicle in that incident. We are not made aware whether "Javier," who was the driver in the sixth DWI incident for which Defendant was arrested was "Javier Hernandez" or, coincidentally, someone with the same first name as the person who Defendant claims to have been the driver in the present matter.

12

charge at issue in this case. The remaining period of "confinement" was related to Defendant's sixth DWI arrest.

{22} The dissent suggests that in the speedy trial context, as in the context of measuring presentence confinement credit, there is no practical distinction between house arrest and incarceration because they both restrict the defendant's liberty. We disagree. In the context of speedy trial, our Supreme Court has recognized a distinction between restrictions on a defendant's liberty imposed as part of a bond release and the "actual restraints" on a defendant's liberty associated with incarceration. *See Salandre v. State*, 1991-NMSC-016, ¶¶ 15, 29-30, 111 N.M. 422, 806 P.2d 562 (rejecting the defendant's argument that restrained liberty as a result of a bond constituted "oppressive pretrial incarceration"); *see also Spearman*, 2012-NMSC-023, ¶ 37 (recognizing that impaired liberty associated with bail, though substantial, is nevertheless a lesser impairment than incarceration). This distinction is especially apt in the present case where Defendant was permitted to leave the confines of house arrest in order to go to work. *See id.* ¶¶ 36-37 (recognizing that consideration of pretrial incarceration in evaluating the prejudice factor of a speedy trial claim is largely aimed at addressing the loss of employment and the enforced idleness associated with incarceration).

**{23}** Furthermore, we are not persuaded that the restraint on Defendant's liberty that resulted from Defendant's arrest for a sixth DWI offense constituted prejudice for the purpose of evaluating the speedy trial claim related to Defendant's fifth DWI offense. We do not read *Zurla v. State*, 1990-NMSC-011, 109 N.M. 640, 789 P.2d 588, to support a contrary proposition. In *Zurla*, in his dissenting opinion, Justice Baca adopted and set out this Court's memorandum opinion filed in the same case. *Id.* ¶ 38 (Baca, J., dissenting). This Court's opinion rejected the defendant's argument that incarceration for a parole violation associated with an unrelated crime should be counted in evaluating the prejudice factor of his speedy trial claim in the at-issue crime. *Id.* ¶¶ 51-53 (Baca, J., dissenting). Although our Supreme Court disagreed with this Court's conclusion, the disagreement was grounded in the fact that by virtue of his lengthy incarceration and the government's failure to prosecute him earlier, the defendant lost the possibility of serving the sentence for the at-issue crime concurrently with the sentence of imprisonment for his parole violation. *Id.* ¶¶ 21-23; *see id.* ¶ 55 (Baca, J., dissenting). As recognized in *Salandre*, *Zurla* held only "that the loss of the possibility of concurrent sentences may constitute an aspect of oppressive pretrial incarceration[.]" *Salandre*, 1991-NMSC-016, ¶ 30. The circumstances here do not resemble the circumstances in *Zurla*, and we do not interpret *Zurla* to stand for the proposition that, under the circumstances of this case,

14

the consequences of Defendant's subsequent arrest demonstrate prejudice from the delay in bringing him to trial.

**E.      Weighing the Factors**

{24}      In sum, in regard to Defendant's speedy trial claim, insofar as Defendant has failed to demonstrate prejudice resulting from the delay in this case, and because none of the other speedy trial factors weigh heavily in his favor, we conclude that the court properly denied Defendant's motions to dismiss on speedy trial grounds. *See Garza*, 2009-NMSC-038, ¶ 40 (concluding that because the defendant failed to show prejudice, and the other factors did not weigh heavily in his favor, the defendant's right to a speedy trial was not violated). We hold that the district court did not err in denying Defendant's motions to dismiss on speedy trial grounds.

**II.      SUFFICIENCY OF THE EVIDENCE**

{25}      Defendant challenges the sufficiency of the evidence in regard to his conviction for driving with a suspended or revoked license. He argues that the only manner in which the fact of his license suspension could have properly been introduced, without violating his right of confrontation, was through "a records custodian[.]" *See State v. Chung*, 2012-NMCA-049, ¶ 2, 290 P.3d 269 (recognizing that, under the United States and New Mexico Constitutions, an accused has the right to confront witnesses against him). According to Defendant, because the State failed to produce a records

custodian to testify that his license was suspended, the State failed to meet its burden of proving, beyond a reasonable doubt, that his license was suspended. We review the sufficiency of the evidence by considering whether, when viewed in the light most favorable to the verdict, substantial direct or circumstantial evidence exists to support a conclusion that the defendant was guilty beyond a reasonable doubt. *State v. Torrez*, 2013-NMSC-034, ¶ 40, 305 P.3d 944. We review questions of admissibility under the Confrontation Clause de novo. *State v. Massengill*, 2003-NMCA-024, ¶ 14, 133 N.M. 263, 62 P.3d 354.

{26}   The traffic stop that led to the charges against Defendant in this case was video-recorded. Portions of the video were played for the jury; and in relevant part, the jury observed the videotaped exchange between Defendant and Officer Harold Edwards, the officer who conducted the DWI investigation following the traffic stop. The video showed Officer Edwards ask Defendant to produce his driver's license, but Defendant told the officer that his license was suspended. After the video was played during trial for the jury and for Officer Edwards, Officer Edwards testified that Defendant had stated that his license was suspended.

{27}   Defendant's admission to Officer Edwards that his driver's license was suspended constituted a statement against his penal interest and was therefore exempt from the rule against hearsay. *See* Rule 11-804(B)(3) NMRA (defining a statement

16

against interest, in relevant part, as one that "a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . [tends] to expose the declarant to . . . criminal liability," and when "offered in a criminal case . . . tends to expose the declarant to criminal liability"). As such, the fact was properly admitted through Officer Edwards. Moreover, because Defendant's admission to Officer Edwards that his license was suspended was not "[a] solemn declaration or affirmation made for the purpose of establishing or proving some fact[,]" it was not testimonial, and it did not implicate Defendant's right to confront witnesses against him. *State v. Navarette*, 2013-NMSC-003, ¶ 7, 294 P.3d 435 (alterations, internal quotation marks, and citation omitted); *see also State v. Telles*, 2011-NMCA-083, ¶ 19, 150 N.M. 465, 261 P.3d 1097 ("[A] defendant's own admissions cannot violate his right to confront the witnesses against him[.]" (internal quotation marks and citation omitted)).

{28} Defendant's own admission of the fact that his license was suspended constituted substantial evidence to support the jury's conclusion that Defendant was guilty of driving with a suspended or revoked license. Defendant's sufficiency of the evidence argument provides no basis for reversal.

## III.  HEARSAY

{29}  "Hearsay is an out-of-court statement offered to prove the truth of the matter asserted." *State v. Sisneros*, 2013-NMSC-049, ¶ 18, 314 P.3d 665.  "We review the admission of hearsay evidence for an abuse of discretion." *Id.*  To the extent that Defendant's hearsay argument includes an alleged violation of his right to confront a witness against him, our review is de novo. *See Massengill*, 2003-NMCA-024, ¶ 14 (stating that we review alleged violations of the Confrontation Clause de novo).

{30}  Officer Edwards testified that he conducted a test of Defendant's breath alcohol level using an IR8000 machine.  Officer Edwards testified further that a certificate of calibration hangs on the wall in the "IR room" and that he always checks to ensure that the certification is current before performing a breath test.  Officer Edwards also testified that the IR8000 was working properly when he measured Defendant's breath alcohol level.  Following this testimony, the court admitted into evidence, through Officer Edwards, a copy of Defendant's breath test results that reflected a breath alcohol concentration of .15.

{31}  Defendant argues that the court erred in permitting Officer Edwards to testify that the calibration certificate of the IR8000 was current and that the machine was working properly when Officer Edwards administered Defendant's breath alcohol test. In Defendant's view, Officer Edwards' testimony as to those two facts was testimonial

18

hearsay that could only have been properly presented through the Department of Health's Scientific Laboratory Division employee who completed the certification. We disagree.

{32} This Court has previously considered and rejected the notion that testimony regarding the calibration certification and the proper working order of breath testing instruments, when presented as a foundation for the admittance of a defendant's breath alcohol results, is testimonial. *See State v. Anaya*, 2012-NMCA-094, ¶¶ 19, 22, 287 P.3d 956 (explaining that issues that are preliminary and foundational in nature, such as a breath testing instrument's current certification and the fact of its proper working order, are non-testimonial and do not implicate the Confrontation Clause). Here, Officer Edwards' testimony regarding the calibration certificate and the proper working order of the IR8000 was information that was foundational to the matter being asserted; the matter being asserted was Defendant's breath alcohol content. *State v. Martinez*, 2007-NMSC-025, ¶ 9, 141 N.M. 713, 160 P.3d 894 (recognizing that the fact that the breath testing instrument is working properly and is properly calibrated are foundational requirements that must be met before the results of a breath test can be admitted into evidence). Accordingly, the State was not required to present the laboratory employee who completed the calibration certificate or otherwise confirmed that the IR8000 was properly working. *See Anaya*, 2012-NMCA-094,

¶¶ 19, 22. It was permissible to allow Officer Edwards to testify as to these foundational facts. *Id.* ¶ 19. Had Defendant wished to challenge Officer Edwards' foundational testimony, he could have obtained the relevant laboratory records. *See Martinez*, 2007-NMSC-025, ¶ 24. Defendant's argument to the contrary provides no basis for reversal.

## IV. PROSECUTOR'S CLOSING ARGUMENT

**{33}** In his next argument, Defendant appears to argue that the district court erred in failing to grant a mistrial based on the prosecutor's allegedly improper remarks during closing argument. We review this issue for an abuse of discretion. *See State v. Torres*, 2012-NMSC-016, ¶ 7, 279 P.3d 740 ("The trial court abuses its discretion in ruling on a motion for mistrial if in doing so it acted in an obviously erroneous, arbitrary, or unwarranted manner." (internal quotation marks and citation omitted)). In considering whether prosecutorial closing arguments warrant reversal of the defendant's conviction we consider whether, in the context of the whole trial, "the statement invade[d] some distinct constitutional protection[,]" the statement was "repeated and pervasive[,]" and "the statement [was] invited by the defense." *State v. Sosa*, 2009-NMSC-056, ¶ 26, 147 N.M. 351, 223 P.3d 348.

**{34}** In its closing argument, the State argued that Defendant's version of the facts was not reasonable, querying "[h]ow reasonable is it that this mystery person gives

20

him the keys and disappears[?]" Continuing in that vein, the prosecutor further observed to the jury that "[t]he mystery person didn't testify today[.]" Defendant argues that the prosecutor's closing argument reference to Mr. Hernandez as "the mystery person who didn't testify today" warranted a mistrial because the prosecutor's comment "impermissibly turned the burden of proof from the [State] to . . . Defendant to produce witnesses." In support of his statement, he cites UJI 14-5060 NMRA for the proposition, stated in the uniform jury instruction, that "[t]he burden is always on the [prosecution] to prove guilt beyond a reasonable doubt."

{35} The jury was instructed that the burden was on the State to prove Defendant's guilt of each charged offense beyond a reasonable doubt. In order to meet its burden of proof, the State presented evidentiary exhibits, as well as the testimony of Sergeant Cain Wyatt, who initiated the traffic stop, and Officer Edwards, who conducted the DWI investigation. Defendant has not demonstrated that the State's evidentiary presentation was insufficient to carry the prosecution's burden of proving Defendant's guilt beyond a reasonable doubt.

{36} Nor are we persuaded that the prosecutor's reference in closing argument to Mr. Hernandez as the "mystery person" had the effect of shifting the burden of proof to Defendant. The prosecutor's comments in that regard were obviously intended to cast doubt on Defendant's version of events. It was permissible for the prosecutor to

comment on Mr. Hernandez's absence from trial. *See State v. Gonzales*, 1991-NMSC-075, ¶ 20, 112 N.M. 544, 817 P.2d 1186 (stating that "[c]omment during closing argument concerning the failure to call a witness is permitted"). Moreover, by testifying about Mr. Hernandez's involvement in the events in question, Defendant opened the door to the prosecutor's comments regarding Mr. Hernandez. *See State v. Taylor*, 1986-NMCA-011, ¶ 25, 104 N.M. 88, 717 P.2d 64 (stating that generally, the prosecutor's remarks must be based on the evidence or they must be in response to the defendant's argument, and "[w]here the defendant opens the door to comments by the prosecutor, such comments are invited and do not constitute reversible error" internal quotation marks omitted)).

{37} It was within the jury's purview to estimate the value of the prosecutor's attempt to call into question the credibility of Defendant's testimony regarding Mr. Hernandez. *Gonzales*, 1991-NMSC-075, ¶ 20. We hold that the court did not abuse its discretion in denying Defendant's motion for a mistrial on the basis of the prosecutor's closing argument comments regarding Mr. Hernandez.

**V.    JURY INSTRUCTIONS**

{38} Defendant argues that the district court erred in refusing to give the jury his proffered instruction, UJI 14-4512 NMRA, that enumerates a number of factors that the jury may consider in determining whether a defendant actually posed a threat to

the public by exercising "actual physical control" over a vehicle while the defendant was impaired. We review the district court's decision to deny a proffered jury instruction de novo. *State v. Lucero*, 2010-NMSC-011, ¶ 11, 147 N.M. 747, 228 P.3d 1167. We consider whether the decision to omit the instruction resulted in a failure to provide the jury "with an accurate rendition of the relevant law." *State v. Soutar*, 2012-NMCA-024, ¶ 21, 272 P.3d 154 (internal quotation marks and citation omitted).

{39} Sergeant Wyatt testified that he saw Defendant operating the vehicle on the night in question. Defendant argues that because the theory of the case that he presented to the jury was that "he was never actually in the physical control of the vehicle[,]" and "the officer was mistaken about [Defendant] driving on the night in question[,]" he was entitled to instruct the jury with UJI 14-4512. UJI 14-4512 contemplates a situation in which a defendant may have been "using the vehicle as stationary shelter[,]" but did not intend, prospectively, to drive the vehicle. *See id.* (stating that a jury may consider a number of factors to determine whether the prosecution proved that the defendant "was in actual physical control of the vehicle and that the defendant intended to drive the vehicle" or whether he "was simply using the vehicle as stationary shelter"). UJI 14-4512 does not appear to have any application in a circumstance where, as here, the defendant claims that he was not in the vehicle, either for shelter or for transportation, and that another person had been

23

driving the vehicle. Under the facts of this case, instructing the jury as to "actual physical control" would not have been appropriate. *See State v. Sims*, 2010-NMSC-027, ¶ 3, 148 N.M. 330, 236 P.3d 642 (stating that "[h]ad [a] police officer or other witnesses observed [the d]efendant behind the steering wheel of a moving vehicle at or near the time of his apprehension," the actual physical control instruction would not have been required and noting that "[i]t is only when there are no witnesses to the vehicle's motion that actual physical control is essential to prove DWI").

{40} On the other hand, based on the instructions that were given to the jury in this case, the jury was required, as to each charged offense, to determine whether Defendant drove the vehicle. In relevant part, the jury was instructed that in order to find Defendant guilty of driving with a breath alcohol concentration of .08 or above, the State had to prove beyond a reasonable doubt that Defendant "operated a motor vehicle[.]" Likewise, in order to find Defendant guilty of driving while his license was suspended or revoked, the jury was instructed, in relevant part, that the State had to prove Defendant "operated a motor vehicle in New Mexico[.]" Finally, in regard to the charging of failure to maintain a traffic lane, the jury was instructed that the State had to prove beyond a reasonable doubt that Defendant "drove a motor vehicle on a street[.]"

24

**{41}** Because each charge required the jury to determine whether Defendant was driving the vehicle on the night in question, the jury was given the specific opportunity to consider Defendant's theory of the case, *i.e.*, that he was not driving. The jury was free to accept or reject the notion that Defendant was not the driver of the vehicle. *See State v. Herrera*, 2014-NMCA-007, ¶ 30, 315 P.3d 343 (recognizing that "the jury is free to reject the defendant's version of the facts" (alteration, internal quotation marks, and citation omitted). That the jury rejected Defendant's version of events, when the instructions adequately led them to consider Defendant's theory, is not grounds for reversal.

## VI. SENTENCING

**{42}** The State presented evidence of four prior DWI judgments entered against Defendant on May 4, 1993, December 22, 1998, September 11, 2000, and April 4, 2002. Based thereon, the court found that Defendant had been convicted of DWI on four previous occasions, and was, therefore, "a habitual DWI criminal offender[.]" Defendant argues that the State failed to meet its burden of proving that he had four previous DWI convictions. He also argues that the court erred in denying Defendant an opportunity to present evidence in support of a collateral attack on the April 4, 2002, judgment. Finally, Defendant argues that his right to confront witnesses against

25

him was violated at sentencing because the State failed to produce "a custodian of records" to "authenticate [the] alleged prior" convictions.

{43} "The [prosecution] bears the initial burden of establishing a prima facie case of a defendant's previous convictions." *State v. Sedillo*, 2001-NMCA-001, ¶ 5, 130 N.M. 98, 18 P.3d 1051. Once the prosecution meets its initial burden of proof by a preponderance of the evidence, "[t]he defendant is then entitled to bring forth contrary evidence." *Id.* Ultimately, the State bears the burden of persuasion on the validity of the prior convictions. *Id.* "We review the sufficiency of the evidence presented in habitual offender proceedings under a substantial evidence standard of review." *State v. Bailey*, 2008-NMCA-084, ¶ 23, 144 N.M. 279, 186 P.3d 908. "Substantial evidence is relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *State v. Contreras*, 2007-NMCA-045, ¶ 15, 141 N.M. 434, 156 P.3d 725 (internal quotation marks and citation omitted). Whether Defendant may collaterally attack a prior conviction based on a claim of fundamental error is a question of law that we review de novo. *State v. Nash*, 2007-NMCA-141, ¶ 11, 142 N.M. 754, 170 P.3d 533.

{44} Before reaching Defendant's other sentencing arguments, we summarily reject his claim that his right to confront witnesses against him was violated at sentencing because the State failed to produce a custodian of records to authenticate the alleged

prior convictions. The constitutional right to confront witnesses is a trial right; it does not apply at sentencing proceedings. *State v. Lopez*, 2013-NMSC-047, ¶¶ 18, 24, 314 P.3d 236. Defendant's argument provides no basis for reversal.

{45} Defendant does not contest the validity of the court's reliance, at sentencing, on the December 22, 1998, or the September 11, 2000, convictions. Defendant's arguments regarding the impropriety of the court's reliance on his previous convictions concerns the May 4, 1993, and the April 4, 2002, judgments. In regard to the May 4, 1993, judgment, Defendant argues that because his signature does not appear on the judgment, the district court could not properly consider it to be evidence of a prior conviction.

{46} The district court rejected Defendant's contention that the May 4, 1993, judgment, insofar as it was unsigned, did not constitute proof of a first DWI offense, observing that the April 4, 2002, judgment reflected that Defendant had pleaded guilty to a fourth DWI offense. Along those lines, although the district court did not so observe on the record, we note that the December 22, 1998, and the September 11, 2000, judgments reflect that they were Defendant's second and third DWI offenses, respectively.

{47} The May 4, 1993, judgment is one page of a four page exhibit presented to the court at Defendant's sentencing hearing. The document titled "judgment and

sentence" did not include a signature line, and it appears to have been only a portion of a larger document. Attached to the judgment and sentence document was a "waiver of counsel" form, also dated May 4, 1993; that document bore Defendant's signature, as well as that of a judge, and stated, in relevant part, that Defendant understood that he was charged with "driving while under the influence of intoxicating liquor[,]" and that he waived his right to counsel. That the waiver of counsel form, which was signed by Defendant and by the court, reflected the same date as the judgment and sentence reasonably supports an inference that the judgment and sentence was acknowledged in court by Defendant on May 4, 1993.

{48} We conclude that the foregoing constituted substantial evidence from which the district court could properly conclude that Defendant's May 4, 1993, DWI conviction was valid. *See Contreras*, 2007-NMCA-045, ¶ 15 (stating that substantial evidence is that which "a reasonable mind would accept as adequate to support a conclusion" (internal quotation marks and citation omitted)). Defendant did not provide any evidence to contradict the State's showing in regard to the May 4, 1993, conviction. And we are not persuaded that the court erred in using that conviction as a basis for concluding that Defendant was a habitual DWI criminal offender.

{49} State's Exhibit 4 included a judgment and sentencing document filed on April 4, 2002, reflecting that Defendant had, on April 3, 2002, appeared in court and

28

pleaded guilty to DWI, among other crimes. Defendant sought, in the district court, and seeks on appeal, to collaterally attack the April 4, 2002, judgment so as to preclude the court's consideration thereof for purposes of sentencing him in the present case.

{50} To succeed in collaterally attacking the April 4, 2002, judgment, thereby showing that the district court was precluded from considering it in sentencing him in the present case, Defendant was required to demonstrate that fundamental error occurred in the entry of the 2002 judgment. *See State v. Pacheco*, 2008-NMCA-059, ¶ 12, 144 N.M. 61, 183 P.3d 946. Because the April 4, 2002, judgment was the result of a guilty plea, to demonstrate that fundamental error occurred, Defendant was required to show that an error "clearly . . . affected the outcome" of the 2002 case. *Id.* (internal quotation marks and citation omitted). Defendant attempts to demonstrate fundamental error in the April 4, 2002, judgment in two ways.

{51} First, Defendant argues that the attorney who signed the judgment and sentence on his behalf was "incompetent because she was a drug abuser," who had "appeared under the influence at the [sentencing] hearing," and "did not explain any of his rights to him[,]" and therefore his conviction was constitutionally invalid. Second, Defendant contends that the attorney who signed the judgment and sentence on his behalf was not his retained counsel, but she "showed up [on] the morning of his

29

sentencing[,]" on his behalf. Defendant appears to argue that because the allegedly incompetent attorney was not his "retained" counsel, his constitutional right to the counsel of his choice was violated. *See State v. Gamlen*, 2009-NMCA-073, ¶ 6, 146 N.M. 668, 213 P.3d 818 (recognizing that, pursuant to the Sixth Amendment to the United States Constitution, a defendant who does not require appointed counsel shall have the right to the counsel of his choice).

{52}    Notably, Defendant does not argue that, but for the allegedly incompetent counsel's appearance on his behalf at the April 3, 2002, sentencing hearing and the alleged deficiencies in her representation, he would not have accepted the plea agreement. On this basis alone, we reject his fundamental error argument. *See Pacheco*, 2008-NMCA-059, ¶ 12 (requiring a showing that the alleged error "clearly . . . affected the outcome" of the case (internal quotation marks and citation omitted)). Furthermore, although Defendant claims that the allegedly incompetent counsel did not advise him of his rights, he does not contend that he was unaware of his rights, either by virtue of a plea colloquy by the sentencing judge in the 2002 case, or by virtue of his "retained" counsel's counseling prior to the April 3, 2002, hearing. Notably, the district court here, having considered that Defendant would likely have engaged in a plea colloquy, gave Defendant ten days from the date of sentencing in

30

the present case to file a motion presenting "any other information" in regard to the judgment and sentence in the 2002 case. Defendant did not file any such motion.

{53} Moreover, in order to demonstrate a violation of his constitutional right as to counsel of choice, Defendant would be required to demonstrate that he was deprived of his counsel of choice by virtue of the actions of a State agent. *See id.* ¶¶ 7-9. Here, Defendant made no attempt to show by evidence or argument in the district court or on appeal that the actions of a State agent caused the allegedly incompetent counsel to appear in the stead of his retained counsel at the April 3, 2002, sentencing hearing that resulted in the April 4, 2002, judgment and sentence. Accordingly, Defendant's argument in that regard is unavailing.

{54} In sum, Defendant has not demonstrated that the district court erred in relying on his four previous DWI convictions in order to enhance Defendant's sentence. Substantial evidence supported the court's finding in regard to the May 4, 1993, conviction, and Defendant has not demonstrated fundamental error in regard to the April 4, 2002, judgment.

**CONCLUSION**

{55} For the foregoing reasons, we affirm Defendant's convictions.

{56} **IT IS SO ORDERED.**

_____
**JONATHAN B. SUTIN, Judge**

31

**I CONCUR:**

_____

**CYNTHIA A. FRY, Judge**

**TIMOTHY L. GARCIA, Judge (dissenting).**

**GARCIA, Judge (dissenting).**

{57}    I respectfully dissent in this case. I disagree with the majority's de novo review and its resulting decision that Defendant's right to a speedy trial was not violated in this case.

{58}    I start with the majority's references to Defendant's briefing and a presumed failure to properly argue positions regarding the four speedy trial factors that were presented to the district court for consideration. Majority Opinion ¶¶ 7, 8, 12, 14. Although the majority properly cites *Spearman* as the basis for the standard of review, it then fails to analyze the underlying facts presented in the record and argued in Defendant's two speedy trial motions that were specifically cited in Defendant's briefs. *See* 2012-NMSC-023, ¶ 19. The majority argues that Defendant failed to take positions or arguments in his briefs or that it would not search the record to analyze Defendant's position regarding two of the speedy trial factors. Majority Opinion ¶¶ 11, 14. Where Defendant's motions are part of the appellate record and specifically referenced in Defendant's briefs, our de novo review would require us to analyze these motions, the supporting evidence in the record, the hearings held by the district court, and the speedy trial arguments presented to the district court. *See State v. Wilson*, 2010-NMCA-018, ¶ 23, 147 N.M. 706, 228 P.3d 490 ("[W]hile deferential to the district court's fact finding, [the appellate courts] independently balance the

33

[four speedy trial] factors."). Under these circumstances, I disagree with the majority that the appellate briefing must specifically focus upon and argue anew every position presented to the district court regarding its initial evaluation of the reasons for the delay and the prejudice incurred by a defendant due to the delay. *See* Majority Opinion ¶¶ 11, 14. Independent balancing necessitates a full and thorough review of the factors identified in Defendant's underlying motions to dismiss and a re-weighing of the speedy trial factors analyzed by the district court. *See Zurla*, 1990-NMSC-011, ¶ 10 (reviewing de novo and determining that this Court weighed several speedy trial factors too lightly and incorrectly when it decided the prejudice prong in its analysis).

{59}     Our Supreme Court has provided guidance regarding the individualized focus that must be undertaken in a speedy trial analysis. *Garza*, 2009-NMSC-038, ¶ 13 ("Violation of the speedy trial right is only determined through a review of the circumstances of a case, which may not be divorced from a consideration of the [s]tate and the defendant's conduct and the harm to the defendant from the delay."). The Supreme Court has explained that "generally a defendant must show particularized prejudice to his ability to defend himself [except] where the length of delay and the reasons for the delay weigh heavily in [the] defendant's favor and [the] defendant has asserted his right and not acquiesced to the delay." *State v. Samora*, 2013-NMSC-038, ¶ 27, 307 P.3d 328 (internal quotation marks and citation omitted). In the present case,

34

I disagree with the majority's analyses of the four speedy trial factors. First, I determine the length of delay should weigh more strongly in Defendant's favor than the majority acknowledges. Second, I determine the administrative delay that was not discussed by the majority opinion should weigh against the State, even if only slightly against the State. Third, Defendant strongly asserted his right to a speedy trial in the district court on two separate occasions. Finally, I determine Defendant adequately demonstrated particularized prejudice, and the State did not meet its burden of rebutting these showings. I shall explain in more detail why I disagree with the majority's analyses of these factors.

**Length of Delay**

{60}    Although the majority asserts that Defendant did not take a position regarding the weight that should be assigned to the delay of approximately twenty-five months, precedent exists to adequately address the length of delay in a simple case. It is undisputed that Defendant never waived his speedy trial right in this particular case.

{61}    Our Supreme Court has previously recognized that delays of this nature do not weigh slightly against the state. *See State v. Maddox*, 2008-NMSC-062, ¶¶ 1, 12, 36, 145 N.M. 242, 195 P.3d 1254 (recognizing that a twenty-eight month delay in an unlawful taking of a motor vehicle case was extraordinary); *State v. Urban*, 2004-NMSC-007, ¶ 20, 135 N.M. 279, 87 P.3d 1061 (weighing a twenty-seven month delay

35

in a simple case heavily against the state); *see also Zurla*, 1990-NMSC-011 , ¶ 12 (weighing a seventeen-month delay in a simple shoplifting case somewhat heavily against the state). Our Supreme Court looks for a delay that is extraordinary before it will weight the delay heavily in a defendant's favor. *Garza*, 2009-NMSC-038, ¶ 24 (noting that the greater the delay the more heavily it will potentially weigh against the state and a delay that scarcely crosses the bare minimum to trigger review is not extraordinary). This Court has issued more modest measures for weighing the delay factor in a defendant's favor. *See State v. Steinmetz*, 2014-NMCA-__, ¶¶ 6, 66, 2014 WL 1600916 (April 17, 2014)  (recognizing that a delay of twenty-eight months beyond the triggering date in a criminal sexual contact of a minor case weighed moderately against the state, not heavily); *State v. Ochoa*, 2014-NMCA-__, ¶¶ 6-7, 13, 2014 WL 982506 (March 11, 2014)  (recognizing that a delay of twenty-four months in a complex case weighed in the defendant's favor, although not heavily); *State v. Fierro*, 2014-NMCA-004, ¶¶ 1, 13, 315 P.3d 319 (recognizing that a delay of twenty-three months in a criminal sexual penetration case weighed against the state, although not heavily); *Montoya*, 2011-NMCA-074, ¶ 17 (recognizing that a twenty-one month delay in an intermediate case only weighed slightly against the state); *Wilson*, 2010-NMCA-018, ¶ 50 (recognizing that a five-month delay beyond the presumptive nine-month period in an intermediate case only weighed slightly against the state);

36

*Valencia*, 2010-NMCA-005, ¶¶ 14, 16 (recognizing a fifteen-month delay in a simple case to weigh only slightly in the defendant's favor)*; State v. Plouse*, 2003-NMCA-048, ¶ 43, 133 N.M. 495, 64 P.3d 522 (recognizing that a total delay of twenty-one months in a complex case, six months beyond the bare minimum of fifteen months at that time, appeared to weigh "somewhat heavily" in the defendant's favor. (internal quotation marks and citation omitted)).

**{62}** Under the circumstances, the additional thirteen-month delay in this simple case may be weighed more heavily against the State than the moderate factor assigned by the majority. As a result, I would consider weighing the length of delay factor more heavily against the State as our Supreme Court recognized in *Maddox*, *Urban*, and *Zurla*.

**Reasons for the Delay**

**{63}** The majority agreed with the district court that the reasons for the delay in bringing Defendant to trial did not weigh in his favor. Majority Opinion ¶ 11. I disagree and would weigh this factor in Defendant's favor, even if it only weighs slightly in his favor.

**{64}** During the twenty-five-month period of delay, the district court appropriately found that Defendant and the State were each responsible for some of the circumstances that caused the delay. I cannot disagree with the district court's

37

deduction of six months that Defendant waived due to his failures to appear and requests for continuances. I also deduct the four months of delay that was caused by the inclement weather. This delay was for a valid reason and will not weigh against either party. *State v. O'Neal*, 2009-NMCA-020, ¶ 21, 145 N.M. 604, 203 P.3d 135 (weighing delay due to inclement weather as neutral). This still leaves almost fifteen months of delay that must be addressed. The time period from July 2, 2010, through September 28, 2011, should weigh against the State. Indeed, the State concedes that its request for continuance and excusal of Judge Orlik caused the delay from August 2, 2011, through September 28, 2011. The district court weighed this time period heavily against the State.

{65}     The bulk of the remaining delay was caused by administrative issues in the district court and the unusual situation wherein all of the district court judges recused or were recused from the case. The district court weighed some of this delay against the State, but considered it neutral and ultimately did not weigh this period against either party. While this delay is neutral, it is also negligent and must be weighed against the State. *See Garza*, 2009-NMSC-038, ¶ 29 (providing that delay attributable to the unavailability of a judge is negligent delay for which the state is responsible). However, we will not weigh this full thirteen-month period of delay against the State. *See Valencia*, 2010-NMCA-005, ¶ 24 (recognizing that some delay resulting from the

38

recusal process should be considered inherent and customary delay); *see also State v. Benavidez*, 1999-NMCA-053, ¶ 35, 127 N.M. 189, 979 P.2d 234 (refusing to weigh the delay caused by the recusal process against the state), *rev'd on other grounds by* 1999-NMSC-041, 128 N.M. 261, 992 P.2d 274. Due to these factors, we should weigh this time period slightly against the State, keeping in mind that for some of this time the case moved with customary promptness due to the inherent nature of delay caused by multiple recusals. *See Valencia*, 2010-NMCA-005, ¶ 24.

**{66}** While Defendant undoubtedly bears some responsibility for the delay in this case, I would conclude that the State is more to blame. "Although negligence is obviously to be weighed more lightly than a deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun." *Garza*, 2009-NMSC-038, ¶ 13 (internal quotation marks and citation omitted). We should be weighing more of the delay in this case against the State. However, no evidence of any intentional delay on the part of the State exists, and I see no extraordinary or protracted delay attributable to the State. In addition, I do not agree with Defendant's unsupported assertion that the delay was deliberately caused by the State. Thus, on balance, we should be weighing this factor slightly in favor of Defendant.

**Assertion of Right**

**{67}** Again, the majority weighed Defendant's assertion of his right to a speedy trial against the State, but only slightly. Majority Opinion ¶ 13. It concluded that Defendant's assertion was adequate but not forceful or frequent. *Id.* I disagree and would weigh this factor clearly and more strongly in Defendant's favor.

**{68}** In assessing this factor of the analysis, we generally "assess the timing of the defendant's assertion and the manner in which the right was asserted. Thus, we accord weight to the 'frequency and force' of the defendant's objections to the delay." *Garza*, 2009-NMSC-038, ¶ 32 (citations omitted). "We also analyze the defendant's actions with regard to the delay." *Id.* "[T]he timeliness and vigor with which the right is asserted may be considered as an indication of whether a defendant was denied needed access to speedy trial over his objection[.]" *Id.*

**{69}** Defendant moved to dismiss the charges against him for the first time on May 26, 2011, and for the second time on January 4, 2012, alleging a violation of his right to a speedy trial. It appears as though both parties were prepared to proceed to trial on March 31, 2011, but that the district court failed to calendar the trial date. Shortly after the trial was rescheduled for August 2, 2011, Defendant asserted his right to a speedy trial for the first time. At that time, Defendant argued that he was prejudiced by the unavailability of certain exculpatory witnesses who would have been available to testify on his behalf when the trial was originally set in 2010. The trial was still

40

delayed until March 2012. None of Defendant's exculpatory witnesses testified on Defendant's behalf at the 2012 trial.

{70} The record indicates that changed circumstances, rather than a desire to obtain a windfall through delay, prompted Defendant to assert his speedy trial right after his case lingered for over a year, and he did so in a timely manner. *See Work v. State*, 1990-NMSC-085, ¶ 7, 111 N.M. 145, 803 P.2d 234 (weighing assertion of the right in favor of the defendant when he filed a speedy trial motion seven months after the indictment and five weeks before trial was scheduled to begin); *see also Urban*, 2004-NMSC-007, ¶ 16 (noting that, contrary to the Court of Appeals position, the original assertion of the defendant's speedy trial right along with two subsequent motions should be given more than little weight against the state); *Johnson*, 1991-NMCA-134, ¶¶ 2, 5 (holding that the defendant adequately asserted his right to a speedy trial by filing a motion to dismiss more than a year after his arrest); *State v. Lujan*, 1991-NMCA-067, ¶ 15, 112 N.M. 346, 815 P.2d 642 (holding that assertion of the right weighed in favor of the defendant because he timely filed a motion for speedy trial and motion to dismiss shortly after receipt of notice of the first trial setting). Once Defendant became aware that his defense would be compromised by the unavailability of witnesses that were material to his defense, he aggressively asserted his constitutional right to a speedy trial. Under the change in circumstances that arose in

this case, the majority fails to explain how a defendant could possibly assert his right more frequently or forcefully. We should weigh this factor more heavily in favor of Defendant as the timing of the assertions of his speedy trial right were appropriate due to the circumstances that developed during the two-year period that he waited for trial. Under these circumstances, his assertion was both forceful and substantive. This factor should be weighed strongly in his favor.

**Prejudice to Defendant**

{71}     "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. "Prejudice should be evaluated in light of the interest of the defendant, which the right was designed to protect." *O'Neal*, 2009-NMCA-020, ¶ 27. Under the three prejudice factors identified in *Garza*, the majority only considered the third factor applicable, that being the possibility of an impairment to the defense. *See* 2009-NMSC-038, ¶ 35; Majority Opinion ¶ 14. The majority refused to recognize Defendant's pretrial confinement as a factor that should be considered when addressing the prejudice factor in this case. Majority Opinion ¶¶ 19-23. It concluded that Defendant was not impaired in presenting his defense, and the prejudice factor did not weigh in his favor. Majority Opinion ¶¶ 18, 23. In reality, two of the *Garza* factors were properly identified in this case and must be evaluated when determining the prejudice to Defendant. The first factor was the pretrial incarceration

factor. It was not disputed that, prior to trial, Defendant spent fifteen months either held in jail or under house arrest, even though the majority of this time resulted from a revocation of Defendant's conditions of release due to a new DWI charge. The second prejudice factor arose because of the unavailability of Defendant's three exculpatory witnesses who were properly identified as witnesses early in the proceedings and were being called to testify that Defendant was driven home on the night in question and was not the driver of the truck that was approached by Sergeant Wyatt.

**A.      The Pretrial Incarceration Factor**

{72}      Under the first prejudice factor, the State did not contest or dispute that Defendant was either incarcerated or placed under house arrest during the majority of the twenty-five-month period that he awaited trial. Although this restriction may have been of Defendant's own making due to his subsequent arrest for a new DWI charge, the period of time he was under conditions of incarceration may still be considered oppressive when determining the prejudice factor. *See Zurla*, 1990-NMSC-011, ¶¶ 21-22, 51-53 (rejecting the Court of Appeals position that a defendant's incarceration due to his own actions that resulted in a revocation of his parole would prevent consideration of whether his pretrial incarceration could be considered under the prejudice factor of the speedy trial analysis). Although *Zurla* specifically addressed

43

the loss of potential concurrent sentencing that resulted from the delay, it refused to recognize the underlying reasons for incarceration, a parole violation, as the means for totally disregarding incarceration when analyzing the prejudice factor. *Id.* ¶¶ 21-22.

{73} Strict house arrest under an electronic monitoring program constitutes official confinement and is recognized as the equivalent of incarceration for the purposes of presentence confinement credit. NMSA 1978, § 31-20-12 (1977); *see State v. Duhon*, 2005-NMCA-120, ¶¶ 6-7, 138 N.M. 466, 122 P.3d 50. These combined restrictions of Defendant's freedom of movement can create the types of prejudice that the first prejudice factor in *Garza* is required to address. 2009-NMSC-038, ¶ 35 (noting that the time spent locked up is dead time that hinders a defendant's "ability to gather evidence, contact witnesses, or otherwise prepare his defense" (internal quotation marks and citation omitted)). "[T]wo-and-one-half years of pretrial incarceration . . . waiting for one's trial to commence—is very substantial prejudice, of the precise kind that the Speedy Trial Clause was meant to avoid." *Id.*(omission in original) (internal quotation marks and citation omitted) ; *see State v. Moreno*, 2010-NMCA-044, ¶¶ 36-37, 148 N.M. 253, 233 P.3d 782 (recognizing twenty-two months of pretrial incarceration as the main factor in determining that the defendant was prejudiced, albeit slightly)*; State v. Stock*, 2006-NMCA-140, ¶¶ 1, 44, 140 N.M. 676, 147 P.3d 885 (recognizing that the defendant's three and one-half years of pretrial incarceration

44

was unacceptably long and thus oppressive). Defendant's fifteen month period of custodial confinement my have been of his own making but it would not be disregarded in this case because it is also combined with other factors of particularized prejudice. *Samora*, 2013-NMSC-038, ¶ 27 (recognizing the significance of particularized prejudice such as the claimed "loss of any exculpatory witnesses, the deterioration of exculpatory evidence, or any other kind of [actual] prejudice to [the] defense"). As a result, we should recognize that Defendant's custodial confinement for the majority of the time period that he waited for trial was an appropriate consideration when evaluating the prejudice factor under a proper *Garza* analysis.

**B.    Other Claims of Particularized Prejudice**

{74}    The majority also minimizes Defendant's claimed assertion of particularized prejudice arising from the unavailability of his exculpatory witnesses. Majority Opinion ¶¶ 15-18. First, the majority asserts that this particularized prejudice was removed when Defendant declined the district court's offer to issue a bench warrant for one key witness, Mr. Hernandez. Majority Opinion ¶ 17. Second, the majority asserts that Defendant's notification regarding the availability of his three key witnesses does not constitute substantial evidence and, as such, was insufficient to establish a threshold showing of particularized prejudice. Majority Opinion ¶ 18. Effectively, the majority asserts that Defendant must produce better evidence

45

regarding the unavailability of his exculpatory witnesses and that any shifting of the burden for the State to overcome a showing of particularized prejudice is satisfied where the district court offers to issue a bench warrant for an unavailable witness who has moved away to an unknown location. I do not agree.

{75} The Supreme Court has provided some guidance regarding what type of evidence is necessary to satisfy a showing of particularized prejudice by a defendant. *See Spearman*, 2012-NMSC-023, ¶ 39. To support an allegation of work-related prejudice, a defendant should offer "some actual evidence in the form of affidavits, testimony, or documentation in support of the allegations of lost employment and bankruptcy." *Id.* However, the additional prejudice in this case was not work-related but was "witness-related."

{76} It is undisputed that Defendant was under house arrest with a release for work during the months leading up to his trial. The identities of Defendant's exculpatory witnesses were already part of the record and known to the State nineteen months before the 2012 trial commenced. Nearly one year before trial commenced, Defendant's counsel notified the district court and the State that Defendant's exculpatory witnesses could no longer be located and that they had apparently moved away. Defense counsel is an officer of the court. *See In re Gabell*, 1993-NMSC-045, ¶ 13, 115 N.M. 737, 858 P.2d 404 (addressing lies and false evidence presented to the

district court by counsel and stating that "a license to practice law requires allegiance and fidelity to truth"(internal quotation marks and citation omitted)). Counsel was not making arguments, he was providing factual information to assist the district court regarding a procedural type of problem, witness availability. *See Coffin*, 1999-NMSC-038, ¶¶ 70-71 (recognizing that factual assertions regarding the availability of a witness for speedy trial purposes may be presented to the district court by defense counsel and properly reviewed on appeal). It would be inappropriate to require defense counsel to testify or provide an affidavit under these circumstances. Rule 16-307 NMRA; *see also State v. Martinez*, 2001-NMCA-059, ¶ 30, 130 N.M. 744, 31 P.3d 1018 (recognizing that if defense counsel was required to testify in a defendant's case, he would be precluded from continuing as an advocate in the case). In addition, the State did not dispute that Defendant's witnesses had moved away and could not be located when it responded to the motion to dismiss.

{77}    If the district court desired a more adequate record regarding the missing witnesses, it could have requested further verification before offering to directly address the problem by issuing a bench warrant for Mr. Hernandez, who, according to Defendant, was the alleged driver of the truck. At trial, none of the three exculpatory witnesses appeared or testified. Based upon the circumstances regarding witness unavailability that were presented to the district court, Defendant fulfilled his

initial burden to establish that his exculpatory witnesses were unavailable for trial. Once undisputed representations regarding witness availability are recognized by the trial court, the burden should have shifted to the State to rebut the claim of prejudice. *See Salandre*, 1991-NMSC-016, ¶ 20 ("Policy reasons that lie at the heart of the speedy trial guarantee also support shifting the burden of persuasion to the state when it has delayed [trial] unnecessarily."). No rebuttal evidence or other representations regarding the availability of Defendant's three exculpatory witnesses was ever offered or presented by the State. On review, we should recognize that Defendant's three rebuttal witnesses were unavailable for trial and undertake a proper evaluation regarding how this change affected the defense and caused prejudice to Defendant.

**{78}** "The heart of the right to a speedy trial is preventing prejudice to the accused." *Garza*, 2009-NMSC-038, ¶ 12. The critical issue in this case centered on who was driving the white truck that Sergeant Wyatt approached after it pulled into Defendant's driveway. Sergeant Wyatt testified that the stop occurred after the truck in question turned into a driveway and stopped. He also testified that Defendant was the driver of the truck. Early in the proceedings, Defendant properly identified his exculpatory witnesses and even issued a subpoena to have Mr. Hernandez appear at his first trial setting. Testimony by independent witnesses that someone else was the driver of the truck was significant and relevant to the defense.

48

{79}   The district court recognized the prejudice that had arisen in Defendant's case and offered to issue a bench warrant as a potential remedy to locate Mr. Hernandez. Neither the district court nor the State explained why a bench warrant was an appropriate or effective remedy to resolve the unavailability of Mr. Hernandez. Such a suggestion could be viewed as a penalty against a witness for having moved away rather than a natural consequence of a long pre-trial delay. Nothing in the record suggests that Mr. Hernandez had done anything wrong or that he deserved to have a bench warrant issued for his arrest because he moved prior to trial. Although Defendant was able to provide his own testimony at trial, the lack of all three witnesses that were identified to corroborate that Defendant was not the actual driver of the truck on the night of the incident was both material and significant. Defendant testified that Mr. Hernandez drove to his home in the white truck to deliver the keys to Defendant's residence that Defendant had previously left at work, and when the officer pulled up, Mr. Hernandez ran away from the scene. Under the facts presented in this case, Defendant was not able to present any of his exculpatory witnesses at trial, due to his un-rebutted position that they had moved to unknown locations during the two years that lapsed between arrest and trial. Although the jury was entitled to disbelieve the testimony of Defendant's exculpatory witnesses, the unavailability of these witnesses was a material impairment to the defense. Considered along with

49

Defendant's custodial confinement, Defendant made a sufficient showing of particularized prejudice under the criteria set forth in *Garza*. This final and most critical prejudice factor should now be weighed in Defendant's favor under our *Garza* analysis.

{80}     After a proper de novo review and a proper re-weighing of the four factors in Defendant's favor under *Garza*, I conclude that Defendant's constitutional right to a speedy trial was violated. I would reverse and remand for dismissal of the charges in this case.


_____

**TIMOTHY L. GARCIA, Judge**